**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **FILE NO. 09-1750 (ADM/JSM)** |
| **THOMAS J. PETTERS, GREGORY M. BELL, and LANCELOT INVESTMENT MANAGEMENT LLC,** | |
| **Defendants,** | |
| **and** | |
| **INNA GOLDMAN, INNA GOLDMAN RECOVABLE TRUST, ASIA TRUST LTD. AS TRUSTEE FOR THE BLUE SKY TRUST, and GREGORY BELL REVOCABLE TRUST,** | |
| **Relief Defendants.** | |

**APPLICATION OF DEWEY & LEBOEUF LLP FOR REIMBURSEMENT OF FEES AND EXPENSES FROM JULY 10 THROUGH AUGUST 31, 2009**

Dewey & LeBoeuf LLP ("D&L"), counsel to Gregory Bell, the Gregory Bell Revocable Trust and Lancelot Investment Management LP (the "Defendants"), hereby submits an application (the "Application") for allowance of compensation for services rendered and reimbursement of related expenses for the period from July 10 through August 31, 2009 (the "Application Period") on behalf of D&L, the DeVore Law Office, P.A. ("DeVore"), and Navigant Consulting ("Navigant") (collectively, D&L, DeVore and

Navigant are referred to as "Applicants"), in connection with the Court's statements during the status hearing on September 1, 2009.[1]

## GENERAL BACKGROUND

1. In 2002, Greg Bell formed several hedge funds in order to invest in the Petters Company, a successful Minnesota business specializing in the sale of consumer goods. Petters Company, owned by Thomas Petters ("Petters"), who was thought to be a respected businessman and philanthropist, appeared well-managed, profitable and enjoyed an excellent reputation in the business community.

2. Through the hedge funds he managed ("Lancelot Funds"), Mr. Bell chose to effectuate investments in Petters by using an independently controlled special purpose vehicle ("SPV"). Mr. Bell's funds essentially made short-term, fixed interest rate loans to the SPV in exchange for a "Note" payable, typically, within 180 days. The SPV then used the loans to finance the acquisition of goods, specifically surplus consumer electronics, which it then sold to "big box" retailers.

3. The Lancelot Funds purchased the Notes only in circumstances where the SPV had a pre-existing, binding Agreement with a retailer to sell the underlying goods to the retailer at a future date. In return, the Lancelot Funds received a security interest in

---

[1] During the status hearing, in response to D&L's inquiry about the methodology for submitting a fee application, the Court stated: "[L]ook to what we have done with regard to the Petters case…I intend to do much the same process here even though we don't have a receiver in place." (9/1/2009 Tr. at 12-13.) Accordingly, Applicants have attempted to follow a process that approximates that used in the *Petters* matter, as well as in bankruptcy and receivership matters in which they are involved.

the underlying goods, a personal guarantee from Petters, and a guarantee from Petters Company.

4. After several years of positive returns from investments, in late September 2008, the FBI raided Tom Petters' ("Petters") home and businesses. Documents unsealed at the time of the raid indicated that Petters was running a massive Ponzi scheme. On October 3, 2008, Petters was arrested on charges of money laundering, wire fraud, mail fraud and obstruction of justice, related to the electronics business with which the Lancelot Funds and Mr. Bell had been involved. From the evidence unsealed at the time of Petters' arrest, it appeared that the loans Mr. Bell's hedge funds were making to Petters' business were not backed by any collateral and, instead, were based on forged documents.

5. From early October 2008 through February 2008, Mr. Bell was named as a defendant in multiple civil lawsuits arising out of the collapse of his hedge funds. Those suits included:

- *Maxwell Halsted Partners, LLC, et al v. Lancelot Investment Management, LP*, filed as a derivative action in the Circuit Court of Cook County, Illinois, Chancery Division.

- *RBS Citizens v. Lancelot Investment, LP*, filed in the Circuit Court of Cook County, Illinois, Chancery Division.

- *Ontario Partners, LP v. Lancelot Investment Management, LP*, filed in the Circuit Court of Cook County, Illinois, Law Division.

- *Ellerbrock Family Trust v. Colossus Capital Fund, LP et al*, filed in Hennepin County District Court, Minnesota.

- *Northwater Five-Year Market Neutral Fund LTD, et al. v. Lancelot Investment Management LLC, et al*, filed in the Circuit Court of Cook County, Illinois, Law Division.

6. On October 3, 2008, the Securities and Exchange Commission ("SEC") made an informal request for information – followed up by subpoenas – from Lancelot Investment Management, LP and Gregory Bell. Mr. Bell cooperated fully with the SEC.

7. On October 20, 2008, the hedge funds operated by Lancelot Investment Management, LLC and Colossus Capital Management, LLC (collectively the "Management Companies") filed for Chapter 7 liquidation in the United States Bankruptcy Court for the Northern District of Illinois (*In re Lancelot Investors Fund, L.P.*, Case no. 08-BR-28225, Bankr. N.D. Ill.). As fiduciaries for the debtor hedge funds, the Management Companies were custodians of many documents necessary for the administration of the funds' bankruptcy estate. Furthermore, the trustee for the funds ("Bankruptcy Trustee") opened an investigation in December 2008 into Mr. Bell and Lancelot Investment Management, LP (among other entities). Mr. Bell cooperated fully with the Bankruptcy Trustee.

8. D&L began representing Mr. Bell, Lancelot Investment Management, LP and Colossus Capital Management, LP (collectively the "Bell Clients") in February, 2009. D&L took over the representation from Winston & Strawn. D&L also assumed the defense of each of the matters described above. Accordingly, D&L attorneys had to familiarize themselves with the facts involved in these matters quickly.

9. When D&L took the case, Winston & Strawn had reviewed a small subset of the more than 1,000,000 documents potentially responsive to the SEC's document

requests. D&L not only had to determine which documents had been reviewed and produced, but also had to review the majority of the data for responsiveness to the SEC requests and privilege. D&L also continued to produce documents and data to the Bankruptcy Trustee.

10. The SEC also issued a subpoena for Mr. Bell's in-person testimony. To prepare, D&L lawyers spent many weeks reviewing documents and meeting with Mr. Bell.

11. D&L and the Bell Clients also have sought to use the bankruptcy process to effectuate a global settlement between the Bell Clients and multiple civil plaintiffs (discussed in greater detail below). To do so, D&L lawyers worked closely with lawyers for the Bankruptcy Trustee. D&L lawyers assisted the Bankruptcy Trustee in seeking and obtaining an injunction that stayed the civil actions against Mr. Bell.

12. D&L also has represented the Bell Clients in the civil matters listed above – filing motions to dismiss, appearing in court, and attempting to focus and narrow the scope of these cases.

13. Due to the broad array of matters in which D&L is representing the Bell Clients, D&L has assigned partners with particular expertise to advise the Bell Clients in their particular specialty. The lead professionals from D&L are described in the following paragraphs.

14. In connection with the potential (and, now, actual) criminal aspect of this engagement, D&L has utilized Seth Farber, a former Assistant United States Attorney with expertise in white-collar criminal defense. On July 10, 2009, Mr. Farber increased

his involvement in the case and is now lead counsel to Mr. Bell in connection with the ongoing criminal matter.

15. In connection with the bankruptcy matter, Lewis Rosenbloom, a restructuring and reorganization specialist with more than 30 years experience in bankruptcy and restructuring matters, has represented the Bell Clients' interests in the bankruptcy estate. He has worked to negotiate a stay of discovery in all civil cases – accomplished through the bankruptcy process – and has tried to negotiate a global settlement of all civil actions through the Bankruptcy Trustee. Mr. Rosenbloom remains active in the case, in order to advise the trial team and participate in negotiations that may lead to a global settlement.

16. In connection with the SEC investigation, D&L included Mark Radke on the team. Mr. Radke has over 20 years of securities law experience and, prior to joining D&L, served as chief of staff to the chairman of the SEC. His knowledge of and expertise in SEC investigations continues to be a vital aspect of D&L's representation of the Bell Clients.

17. In connection with the civil cases, D&L utilized Alan Salpeter, a lawyer with more than 30 years experience trying complex commercial and financial cases, to advise the Bell Clients. Mr. Salpeter is an accomplished litigation strategist and has been instrumental in evaluating the strengths and weaknesses of claims and defenses involved in the above-mentioned civil cases. Mr. Salpeter also helped prepare Mr. Bell for testimony before the SEC and continues to consult with and advise the lawyers preparing Mr. Bell's defense of both the SEC enforcement action and the criminal case.

18. Vincent Schmeltz has, and continues to, manage all aspects of the civil cases and the criminal matter for the Bell Clients, seeking advice from the lawyers described above, as needed. Mr. Schmeltz has more than 10 years experience representing plaintiffs and defendants in complex financial fraud and securities fraud cases.

19. Since Mr. Bell's arrest, each of the above-mentioned attorneys continues to contribute his expertise in representing the Bell Clients in the criminal and SEC civil enforcement actions, although Messrs. Salpeter, Rosenbloom and Radke have maintained a high-level advisory role on the file in order to avoid duplication and control costs.

20. D&L also has retained outside professionals to assist it in this matter. First, D&L has retained Kevin DeVore as Minnesota co-counsel. Mr. DeVore is an experienced criminal defense lawyer in the Minneapolis-St. Paul area, with significant experience and insight into local rules, practices and procedures. Mr. DeVore has contributed his insight and experience to the team in the criminal matter and, in the SEC enforcement case, has provided valuable assistance in navigating the local practices in the United States District Court for the District of Minnesota.

21. Finally, D&L has retained Navigant Consulting in order to assist it in analyzing the revenue and expenses generated by the management companies that Mr. Bell owns. Navigant also has provided expert services – in contemplation of the preliminary injunction hearing and related to the effort to unfreeze assets for the Bell Defendants and relief defendant Inna Goldman.

22. The professionals who provided services to the Debtors during the Application Period are set forth in the chart above, together with the year the professional was admitted to practice (if applicable), the hourly rate and aggregate hours spent by each such professional and paraprofessional in providing services for which compensation is sought, and the resulting fee (hourly rate times hours). The rates charged by the Applicants for services rendered to the Defendants are the standard rates that it charges generally for professional services.

**DESCRIPTION OF SERVICES RENDERED**
**DURING THE APPLICATION PERIOD**

23. The following summarizes the work performed by the Applicants during the Application Period in connection with: (i) the Securities and Exchange Commission's ("SEC") investigation; (ii) other civil litigation pending against the Bell Defendants; (iii) the arrest of, and criminal complaint filed against, Mr. Bell, captioned *United States v. Bell*, Case No. 09-MJ-273 (MJD) ("Criminal Proceeding"); and (iv) the civil enforcement matter filed against Defendants, captioned *Securities and Exchange Commission v. Petters, et. al.*, Civil Action No. 09-1750 (ADM/JSM).

24. The Applicants have diligently and carefully maintained records of the time expended in this case, the entries of which have been made on each professional's time records that contain a narrative description of the services rendered for the particular day, edited for clarity, and the time records have been entered on a routine basis. *See* Affid. of Vincent P. Schmeltz III ("Schmeltz Affid.") at ¶¶ 3-4. Further, mindful of the variance in

hourly rates used nationally, counsel has cut approximately 11% of the time and expenses from the D&L bill. *Id.* at 5.

25. In an effort to maintain the attorney-client privilege and attorney work product protection with respect to D&L's representation of the Defendants, the descriptions of services rendered during the Application Period has been abbreviated. A complete itemization of tasks performed by D&L professionals and paraprofessionals during the Application Period, together with detailed time entries will be made available to the Court *in camera*.

26. The matters for which Applicants seek compensation are:

- **Represent Mr. Bell in Criminal Proceeding.** Since July 10, 2009, D&L and DeVore have represented Mr. Bell in two detention hearings, prepared briefs related to those hearings and other issues in the case, reviewed evidence, conferred with the United States Attorney's Office, and met with and advised Mr. Bell. D&L and DeVore have spent approximately 531.12 hours on this work during the Application Period. Of this amount, approximately 318.83 hours related specifically to preparing for and participating in the detention hearings, attempting to repatriate assets in order to demonstrate that Mr. Bell could not be a flight-risk based on offshore assets, and preparing and filing related briefs.

- **Represent Bell Defendants in Civil Litigation and Bankruptcy Matter.** Throughout the course of D&L's engagement, it has been representing the Bell Defendants in the civil matters and bankruptcy investigation discussed above. During the Application Period, D&L lawyers appeared in court for status hearings and maintained a dialogue with counsel for the Bankruptcy Trustee about a variety of issues, including the status of document production and privilege review. D&L has spent approximately 34.55 hours on this work during the Application Period.

- **Review of Potentially Privileged Material for Defendants' Production of Documents to the SEC.** Throughout the course of D&L's engagement, it has been reviewing, and making a rolling production of, documents on behalf of the Defendants. As a part of this process, D&L has isolated potentially privileged materials and reviewed those materials to determine whether they actually are subject to either the attorney-client privilege or the protection of the work product doctrine. That work continued until early August, at which time it became clear

that the SEC was not going to enter into an agreement to pay for D&L's fees for either this project or the accounting work, discussed below. D&L has spent approximately 215.70 hours on this work during the Application Period.[2]

- **Represent Bell Defendants in SEC Enforcement Matter.** Since July 10, 2009, D&L and DeVore have represented the Defendants in multiple hearings, negotiated with the SEC regarding releasing funds from the asset freeze, and drafted briefs related to core issues in the case. David A. Moes, an accounting expert from Navigant, has worked with D&L to support these efforts. Applicants have spent approximately 663.83 hours on this work during the Application Period.

  - **Detailed Accounting.** Since July 10, 2009, D&L and Navigant have worked together to prepare a detailed accounting to the SEC, as required by the July 24, 2009 Preliminary Injunction Order. Navigant has been primarily responsible for preparing a detailed analysis of the fees paid to, and the expenses incurred by, Lancelot Investment Management and, ultimately, the fees paid to Mr. Bell. D&L professionals and paraprofessionals have reviewed documents and compiled data in order to account for the income and expenses of Mr. Bell and relief defendants Gregory Bell Revocable Trust, Inna Goldman Revocable Trust, and Inna Goldman. D&L and Navigant have spent approximately 175.19 hours related to this requirement.

  - **Repatriation of Assets.** Since July 10, 2009, D&L has worked with the SEC and DOJ to ensure that the Defendants could not access funds in an offshore trust. D&L also worked to repatriate those funds and had secured an agreement acceptable to the SEC and the fiduciaries of the trust to do so. Time attributed to this effort is captured under the "Detention Hearing" category described above. From July 30, 2009, when Defendants learned that the Swiss government had frozen the funds in offshore trust and, thus, the funds could not be repatriated without intervention by the United States government, D&L has worked with the SEC to repatriate the funds. D&L has spent approximately 15 hours on this work during the Application Period.

  - **Preliminary Injunction.** D&L lawyers and consultants for Navigant have spent approximately, 212.62 hours preparing witness testimony, cross-examination material, and an opposition brief for the Preliminary Injunction

[2] These approximate amounts result from a diligent effort by counsel to allocate work to specific tasks, in order to make review of this Fee Application easier for the Court. *See* Schmeltz Affid. at ¶ 5. Also, as appropriate, Applicants have noted instances when professionals from only one firm have performed work – such as Navigant or D&L.

hearing. This time also includes time spent by D&L lawyers negotiating an agreed injunction with the SEC.

- **Efforts to Unfreeze Assets**. D&L lawyers and consultants for Navigant have worked together to prepare backup demonstrating that a significant portion of the Bell family assets are unrelated to the alleged fraud and preparing briefs and an affidavit to submit to the Court. The time spent on this matter exceeds 210 hours.

27. The accompanying Schmeltz Affidavit provides detailed back-up of the fees and expenses sought by each professional service firm during the Application Period. *See* Schmeltz Affid. at pp 6-8. These details include: (i) the time spent by each individual, the rate at which they bill, their respective seniority; (ii) the amount of time spent by each firm on each of the matters described above; and (iii) a summary, by category, of the expenses each firm incurred during the Application Period. *See id.*

28. As more thoroughly discussed in forth in the Memorandum of Law filed contemporaneously with this application and the accompanying Declaration of David Moes, Mr. Bell earned more than $3.2 million in fees for activity completely unrelated to the fraud alleged by the SEC in this matter. The fees Applicants seek through this application are a fraction of that amount.

**WHEREFORE**, based on the foregoing and on the supporting Affidavit of Vincent P. Schmeltz III and the Memorandum of Law filed contemporaneously with this application, Applicants respectfully request approval for the following:

(i) compensation for professional fees in the following amounts:

a. **Dewey & LeBoeuf LLP** $595,416.00;

b. **DeVore Law Office, P.A.** $5,800;

c. **Navigant Consulting** $130,777.50; and

(ii) reimbursement of actual, reasonable and necessary out-of-pocket expenses incurred during the Application Period in the following amounts:

a. **Dewey & LeBoeuf LLP** $47,698.44;

b. **DeVore Law Office, P.A.** $73.31;

c. **Navigant Consulting** $49.10.

Dated: September 10, 2009

Gregory Bell, Lancelot Investment Management, LLP, and Gregory Bell Revocable Trust

/s/ Vincent P. Schmeltz III
One of Their Attorneys

Kevin W. DeVore
Minnesota Atty. ID # 267302
DEVORE LAW OFFICE, P.A.
First National Bank Building
332 Minnesota Street, Suite W-1610
St. Paul, Minnesota 55101

Mark S. Radke (*pro hac vice*)
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Washington, DC 20005-4213

Vincent P. Schmeltz III (*pro hac vice*)
DEWEY & LEBOEUF LLP
Two Prudential Plaza
180 North Stetson Avenue
Suite 3700
Chicago, IL 60601-6710