UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
09-1750 ADM/JSM


U.S. Securities and Exchange Commission,    )
    )
    Plaintiff,    )
    )    **MEMORANDUM OPINION**
    )    **AND ORDER**
    v.    )
    )
Thomas J. Petters,    )
Gregory M. Bell,    )
Lancelot Investment Management, LLC,    )
Inna Goldman,    )
 Inna Goldman Revocable Trust,    )
Asia Trust Ltd.,    )
Blue Sky Trust, and    )
Gregory Bell Revocable Trust,    )
    )
    Defendants.    )

_____

John E. Birkenheier, Esq., United States Securities and Exchange Commission, Chicago, IL, and Robyn A. Millenacker, Assistant United States Attorney, Minneapolis, MN, on behalf of Plaintiff United States Securities and Exchange Commission.

Vincent Paul Schmeltz, III, Esq., Dewey & LeBoeuf LLP, Chicago IL, and Kevin W. DeVore, DeVore Law Office, P.A., St. Paul, MN, on behalf of Defendants Gregory M. Bell, Lancelot Investment Management, LLC, and Gregory Bell Revocable Trust.

Inna Goldman, pro se.

_____

## I.  INTRODUCTION

On October 6, 2009, the Court heard oral argument on the motion of Defendants Gregory

M. Bell ("Bell") and Lancelot Investment Management ("Lancelot Management") and Relief

Defendants Gregory Bell Revocable Trust and Inna Goldman ("Goldman") (collectively,

"Movants") [Docket No. 72] seeking payment of attorney fees and living expenses from assets that are the subject of stipulated preliminary injunctions.  The Court also heard argument on the related fee application of Dewey & LeBoeuf LLP ("Dewey") [Docket No. 76].  At the hearing, counsel for Bell and Lancelot Management argued that Bell and his family are unable to pay living expenses and fund Bell's defense unless frozen funds are released.[1]

Bell's wife, Inna Goldman, appeared pro se and represented that she has been seeking employment but has not yet secured a job.  She also provided the Court with further detail regarding the one-time expenditures for which Movants seek payment.   The Motion is accompanied by a declaration by Goldman stating that the Bell family's sole current source of income is income of $975 per month, less expenses, from the rental of a condominium Goldman owns in Chicago, IL.  Mem. in Supp. of Mot. [Docket No. 74] Ex. C ("Goldman Decl.") ¶ 4.

Plaintiff United States Security and Exchange Commission ("the SEC") filed a response ("SEC's Response") [Docket No. 96] opposing Movants' requested relief and Dewey's fee application.  The SEC argued that the frozen funds should not be released to pay living expenses or attorney fees because the frozen assets are not sufficient to satisfy the amount of disgorgement sought by the SEC.  The SEC further argued that if funds are released to pay attorney fees and living expenses, the amounts requested by Movants and their counsel are excessive.

## II. BACKGROUND

This case concerns an asset freeze on all of Movants' assets pursuant to a temporary

---

[1] Among the arguments tendered by counsel was the alleged overbreadth of the asset freeze. The Court ruled that because the present Motion was styled and briefed as a request for living expenses and attorney fees and not as a motion to modify the Injunction, the scope of the Injunction was not properly before the Court.

restraining order ("TRO") [Docket No. 18] that was converted on July 24, 2009 to stipulated preliminary injunctions. See Agreed Order of Prelim. Inj. as to Defendants Bell, Lancelot Management, and Gregory Bell Revocable Trust [Docket No. 45]; Agreed Order of Prelim. Inj. as to Relief Defendants Goldman, Inna Goldman Revocable Trust, Asia Trust, Ltd., and Blue Sky Trust [Docket No. 46] (collectively, "the Injunction"). The Injunction preserves the status quo pending the outcome of a related criminal case against Bell and Lancelot Management. See U.S. v. Bell, 09-269 PAM (D. Minn. Sept. 17, 2009) ("Bell Criminal"). The Injunction also requires the Defendants and Relief Defendants to file a detailed, sworn accounting with the Court and to repatriate to the United States all funds held by them in foreign accounts. Docket No. 45 at 7-10; Docket No. 46 at 4-7.

The SEC alleges that Bell raised $2.62 billion in investment funds ("the Funds") from 2002 to 2008, and used the Funds to purchase secured notes sold by Petters Co., Inc. ("PCI"), an entity owned and operated by Defendant Petters ("Petters"). Compl. [Docket No. 1] ¶ 8. Bell is accused of misleading investors by falsely representing that certain measures were being taken to safeguard their investments, diverting a portion of the Funds to help Petters acquire Polaroid, conducting phony transactions with Petters and others to give the appearance that PCI was making timely payments on its notes, and providing investors with false monthly statements showing profits from investments in the PCI notes. Id. ¶¶ 89-96, 121-155. In September 2008, the scheme collapsed and an indictment alleging a massive Ponzi scheme was returned. See U.S. v. Petters, 08-364 RHK/AJB (D. Minn. Dec. 1, 2008) ("Petters Criminal") [Petters Criminal Docket No. 79].

During the 2002-2008 time period when Bell was raising the Funds, Bell and Lancelot

Management withdrew at least $92 million in cash from the Funds in the form of management and performance fees. Decl. of Donald A. Ryba in Supp. of Pl.'s Resp. ("Ryba Decl.") [Docket No. 97] ¶ 33. Of this amount, $40 million was withdrawn in the months preceding the collapse of Petters' alleged Ponzi scheme. Compl. ¶ 15. At least $23 million of this amount was then transferred to revocable trusts in Bell's and Goldman's names and to a bank account in Switzerland. Ryba Decl. ¶¶ 34-39.

Bell has been detained in Minnesota since July, 2009 and entered a plea of guilty to wire fraud on October 7, 2009. Bell Criminal Docket Nos. 22, 42.

### III. DISCUSSION

It is well settled that a district court has authority to enter an asset freeze order in an SEC enforcement action. See S.E.C. v. Manor Nursing Centers, 458 F.2d 1082, 1105-06 (2d Cir. 1972); S.E.C. v. Dowdell, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001); S.E.C. v. Duclaud, 170 F. Supp. 2d 427, 429 (S.D.N.Y. 2001); S.E.C. v. Int'l Loan Network, Inc., 770 F. Supp. 678, 696 (D.D.C. 1991); S.E.C. v. Coates, No. 94 Civ. 5361, 1994 WL 455558, at *1 (S.D.N.Y. Aug. 23, 1994). In turn, a district court has the "corollary authority to release frozen personal assets, or lower the amount frozen." Duclaud, 170 F. Supp. 2d at 429.

A district court may exercise its discretion to release frozen funds to pay living expenses or attorney fees, even in instances where the profit from the alleged wrongdoing exceeds the amount of the frozen funds. See Dowdell, 175 F. Supp. 2d at 854; Commodities Future Trading Comm'n. v. Noble Metals, 67 F.3d 766, 775 (9th Cir. 1995). Whether a defendant has other sources of income from which to pay living expenses or attorney fees is a factor in determining whether frozen assets should be released to pay these costs. See Dowdell, 175 F. Supp. 2d at

854; <u>Coates</u>, 1994 WL 455558, at *2.

Here, Movants have shown that their other sources of income are currently insufficient to pay family living expenses and Bell's attorney fees. Bell has been detained for approximately three months, and Goldman has been seeking employment without success. The rental income Goldman receives will not adequately support her and her two minor children. Thus, frozen funds will be released in an amount necessary to pay family living expenses and reasonable attorney fees.

### A. Living Expenses

The IRS National Standards for Allowable Living Expenses and Local Standards for Transportation and Housing and Utility Expenses, updated March 1, 2009, provide an objective benchmark for a monthly living allowance for Goldman and her two children. The IRS guidelines allow $3,932 per month for a family of three living in Lake County, Illinois and making a monthly rent or mortgage payment. Arguably, the Bell family's allowance should be less because their home is not encumbered by a mortgage and Goldman receives a small monthly income from the condominium she owns. However, the IRS standards do not include expenses for medical and dental insurance, and the Bell/Goldman family's monthly premiums for these items total $892. <u>See</u> Goldman Decl. Ex. 1. Under these facts, the IRS standards represent a reasonable monthly allowance for the Bell/Goldman household, and the Court will authorize monthly payments of $3,932 from frozen funds for three months. Movants may renew their request for living expenses at the end of the three month period. Additionally, the Court will authorize a one-time payment of $3,000 for Movants' requested miscellaneous expenses. This amount reflects $2,100 in back-to-school expenses and $900 for health care for Goldman's

mother.[2]

## B. Attorney Fees

The fees and expenses requested in Dewey's fee application are excessive and will not be fully allowed. Reasonable attorney fees are computed by using the lodestar method of multiplying the number of hours reasonably expended by the reasonable hourly rate. Fish v. St. Cloud State Univ., 295 F.3d 849, 851 (8th Cir. 2002). "In general, a reasonable hourly rate would be the ordinary fee for similar work in the community." Avalon Cinema Corp. v. Thompson, 689 F.2d 137, 140 (8th Cir. 1982); see also Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, 771 F.2d 1153, 1160 (8th Cir. 1985) ("We do not automatically accept the lawyer's rate as reasonable; we look also to the ordinary fee for similar work in the community."). A court may limit out-of-town counsel to local rates where adequate counsel located closer to the litigation can be found for substantially lower rates. See, e.g., Avalon, 689 F.2d at 140-41 (reducing hourly rate of out-of-town counsel to community rate because local counsel with requisite expertise could have been retained).[3] Additionally, the court may apply its own knowledge and expertise regarding the nature of the services rendered and the normal rates in the area to calculate a reasonable fee. Smith v. Freeman, 921 F.2d 1120, 1122 (10th Cir. 1990).

---

[2] Unlike the living expense itemization, which is attached to Goldman's declaration under penalty of perjury, the one-time expense itemization is attached to an unsworn letter from Bell. See Mem. in Supp. of Mot. Ex. B, Sched. B. Many of the back-to-school expense items appear inflated, including $900 for books at a public school, $15 for rulers, $16 for scissors, and $48 for paper.

[3] Counsel argues that because Bell lived in Chicago, ran a hedge fund there, and had retained the Dewey firm prior to these proceedings, the rates charged in Chicago are the relevant market rates. However, these proceedings are venued in Minneapolis, Bell is detained here, and no showing has been made, nor does the Court think one can be made, that the local bar lacks the competence and expertise necessary to represent Bell in these matters.

The Court is familiar with the rates charged in the local community to represent other defendants charged in this alleged Ponzi scheme. Hourly rates for lead counsel range from $400 to $550 per hour,[4] as compared with $875 charged by lead counsel for Bell. The blended hourly rate charged by counsel for Defendant Petters' defense over the past eleven months totals $309, as compared with the blended hourly rate of $547 charged by counsel for Bell. The Court will reduce Dewey's requested fees to an amount which conforms to local market rates. Reductions will also be made for time entries viewed as duplicative or excessive. The expenses contained in Dewey's billing statements are also unreasonable. For example, over $27,000 was charged for computer assisted legal research. This amount cannot be justified in light of counsel's experience and level of expertise. Expenses relating to out-of-town travel exceed $13,000 and will not be fully allowed. Accordingly, the fees and expenses reflected in Dewey's billing statements will be reduced to a total allowed amount of $360,000.00.

The fee application also requests payment for financial and accounting services performed by Navigant Consulting ("Navigant"). Navigant's blended hourly rate of $373 is six percent higher than that charged by Pricewaterhouse Coopers LLP, the national accounting firm providing services in the Petters case. Because the financial issues in the Petters case are more complex than those presented here, Navigant's higher rate is not justified, and Navigant's requested fees and expenses will be reduced to $122,980.00.

Finally, the fee application includes an invoice for the fees and expenses of local counsel DeVore Law Office, P.A. ("DeVore") in the amount of $5,873.31, which will be allowed in the full amount requested.

---

[4] An exception was made for one defendant's extremely experienced criminal defense counsel providing services under much different circumstances.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Motion [Docket No. 72] for Payment of Attorney Fees and Living Expenses and the Fee Application [Docket No.76] of Dewey LeBoeuf LLP are **GRANTED IN PART** and **DENIED IN PART**.

2. The Court authorizes the release of funds to Inna Goldman in the amount of $3,932 per month for three months for payment of living expenses, and a one-time payment of $3,000 for miscellaneous expenses.

3. The Court authorizes payment for legal services provided to Defendants Bell and Lancelot Management from July 10, 2009, through August 31, 2009, as follows:

Dewey & LeBoeuf LLP        $360,000.00

DeVore Law Office, P.A.     $5,873.31

Navigant Consulting         $122,980.00

                                          BY THE COURT:


                                              s/Ann D. Montgomery
                                          ANN D. MONTGOMERY
                                          U.S. DISTRICT JUDGE

Dated:  October 20, 2009.