UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| U.S. Securities and Exchange Commission, ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| v. ) | Civil No. 09-1750 ADM/JSM |
| ) | |
| Thomas J. Petters, ) | |
| Gregory M. Bell, ) | |
| Lancelot Investment Management, LLC, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| and ) | |
| ) | |
| Inna Goldman, ) | |
| Inna Goldman Revocable Trust, ) | |
| Asia Trust Ltd., ) | |
| Blue Sky Trust, and ) | |
| Gregory Bell Revocable Trust, ) | |
| ) | |
| Relief Defendants. ) | |

_____

Sally J. Hewitt, Esq., United States Securities and Exchange Commission, Chicago, IL, on behalf of Plaintiff United States Securities and Exchange Commission.

Inna Goldman, pro se.

_____

## I. INTRODUCTION

This matter is before the undersigned District Court Judge on Relief Defendant Inna Goldman's ("Goldman") letter ("Goldman Letter") [Docket No. 140] seeking to modify the stipulated asset freeze to exclude an automobile and her children's bar and bat mitzvah money

and requesting funds for payment of living expenses.

Plaintiff United States Security and Exchange Commission's ("the SEC") Response [Docket No. 141] urges Goldman's request for living expense payments be denied based on the Court's previous ruling that future living expense awards will not be allowed. The SEC contends the automobile should not be excepted from the asset freeze because it was acquired with proceeds from fraud. Id. The SEC stipulates to the release of the bar and bat mitzvah money. Stip. for Entry of Agreed Order [Docket No. 144].

## II. BACKGROUND

The background of this civil action (the "SEC Case") is set forth in the Court's Memorandum Opinion and Order of October 20, 2009 [Docket No. 112] and is incorporated by reference. Briefly, all assets belonging to Defendants Gregory M. Bell ("Bell"), Lancelot Management, LLC ("Lancelot"), and the Relief Defendants are subject to stipulated injunctions (the "Stipulated Preliminary Injunctions") established to preserve the status quo pending the outcome of civil and criminal cases against Bell. See Agreed Order of Prelim. Inj. as to Def.s [Docket No. 45]; Agreed Order of Prelim. Inj. as to Relief Def.s [Docket No. 46]. Bell is accused of misleading investors into investments which Defendant Thomas J. Petters ("Petters") used to support a massive Ponzi scheme. Compl. [Docket No. 1]; U.S. v. Bell, 09-269 PAM (D. Minn. Sept. 17, 2009) ("Bell Criminal"), Compl. [Bell Criminal Docket No. 1]. On October 7, 2009, Bell entered a plea of guilty to wire fraud. [Bell Criminal Docket No. 40]. He remains in custody and is awaiting sentencing. On December 2, 2009, a jury returned a verdict of guilty on all twenty counts charged against Petters in the criminal Ponzi scheme. U.S. v. Petters, 08-364 RHK/AJB (D. Minn. Dec. 1, 2008) ("Petters Criminal"), Verdict [Petters Criminal Docket No.

361]. Petters was sentenced to a fifty year prison term. Sentencing J. [Petters Criminal Docket No. 400]. He is appealing his judgment and commitment. Notice of Appeal [Petters Criminal Docket No. 401].

The SEC seeks to disgorge over $41 million from accounts belonging to Bell, Lancelot, and the Relief Defendants. Ryba Decl. [Docket No. 97] ¶ 36. The total amount of assets subject to the stipulated asset freeze are estimated at $27 million. Id. at ¶ 35.

Goldman, who is Bell's wife, seeks to modify the stipulated asset freeze to exclude a 2002 Lexus convertible and approximately $18,700 in funds given as gifts to her children for their bar and bat mitzvahs.[1] Goldman also requests a third award of living expense payments from frozen funds.

### III. DISCUSSION

**A. Automobile**

Goldman contends that the Lexus automobile should be excepted from the asset freeze because it was not paid for with the proceeds from Bell's fraud. However, the record strongly indicates fraudulent proceeds or tainted funds were used to lease and purchase the car. Bell began leasing the automobile in 2002 and purchased it in 2006. Goldman Letter at 1. Over 90% of the Bell-Goldman income earned during this time period was derived from Bell's management of Lancelot Investors Funds and Colossus Capital Fund LP, entities which both invested routinely with Petters. Ryba Decl. Ex. 10; ¶¶ 23, 28, 33. Moreover, this income was

---

[1] Goldman initially requested the release of $14,000 in bar and bat mitzvah money, but increased the amount to $18,752.05 in a subsequent affidavit. See Goldman Letter at 1; Goldman Aff. [Docket No. 143] ¶¶ 2-3.

commingled with Bell and Goldman's joint accounts. Id. ¶ 31. Goldman has produced no evidence to support her contention that the automobile was leased and purchased with untainted money. Therefore, the request to modify the asset freeze with respect to the 2002 Lexus automobile is denied.

### B. Bar and Bat Mitzvah Money

The stipulation between the SEC and Goldman is consistent with the SEC's prior acknowledgment that the gifts received by the Bell children at their bar and bat mitzvah have not been commingled with funds derived from Bell's fraud. See Resp. in Opp'n. to Mot. for Atty's Fees, Sept. 29, 2009 [Docket No. 96] at 12 ("The only assets that appear not to have been tainted are the $14,000 of gifts the Bell children received for their bar mitzvah and bat mitzvah"). Bank statements produced by Goldman further support her assertion that the bar and bat mitzvah money remained separate from fraudulent funds. See Goldman Aff., Ex. 1-2. Therefore, the CD accounts of Goldman's son and daughter which hold a combined total of $18,752.05 are released from the asset freeze.

### C. Living Expenses

The loss experienced by Bell's defrauded investors exceeds the amount of assets frozen, and compensation to Bell's victims will be further diminished if frozen assets are used to pay the living expenses of Bell's family. Therefore, the Court reiterates that "living expense payments from funds preserved for Bell's victims cannot be justified and will no longer be approved." Mem. Opinion and Order, Jan. 25, 2010 [Docket No. 134] at 5. Goldman's minimal assets and difficulty obtaining employment may make her eligible for public assistance or unemployment benefits, but do not entitle her to funds procured by Bell's admitted fraud. Therefore, Goldman's

4

request for payment of living expenses is denied.

### IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

- A. The Request [Docket No. 140] to Modify the Stipulated Injunctions and for Payment of Living Expenses is **DENIED** as it pertains to the Lexus automobile and the request for payment of living expenses, and **GRANTED** as it pertains to the bar mitzvah and bat mitzvah money belonging to Goldman's children.

- B. Inna Goldman shall be allowed to transfer a total of $10,347.45 from bank account no. XXXXXXXX 4624, held at Bank of America ("Bat Mitzvah Account");

- C. Inna Goldman shall be allowed to transfer a total of $8,404.60 from bank account no. XXXXXXXX 0904, held at Bank of America ("Bar Mitzvah Account");

- D. No other withdrawals from any other frozen account shall be permitted other than those identified in Sections IV.B. and IV.C. above;

- E. The money disbursed for Inna Goldman's benefit described in IV.B. and IV.C. above shall be wired into account no. XXXXXXXX 8890 held in her name at Fifth Third Bank ("Goldman Account"); and

F. All other assets remain subject to the asset freeze established by the Stipulated Preliminary Injunctions.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: April 30, 2010.